IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JAMES DOUGLAS DAVIS,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:04CV238 TC |

After a jury trial, Petitioner James Davis was found guilty of a violation of 18 U.S.C. § 2422(b), Coercion and Enticement of a Minor for Illegal Sexual Activity. (Criminal Docket, Doc. 11.[1]) Section 2422(b) prohibits the use of any facility of interstate or foreign commerce to knowingly persuade or induce a minor (a person younger than eighteen years of age) to engage in illegal sexual activity. The government contended that Mr. Davis intended to have sex with a thirteen-year old girl, which would be illegal under Utah law. (Utah Criminal Code Section 76-5-402 makes it a crime to engage in sexual intercourse with a person under the age of fourteen).

The government's evidence at trial established that Mr. Davis, using the screen name "sir_welhung," had engaged in a series of on-line chats with an undercover agent, who was posing as a thirteen-year old girl, "leslielee4." The chats culminated with Mr. Davis coming to a pre-arranged meeting with "leslielee4" where Mr. Davis was arrested. Mr. Davis testified at trial

---

[1] The criminal docket, Case No. 2:02CR 0233TC is referred to as "Cr. Doc." The civil docket, Case No. 2:04CV 0238TC, is referred to as "Civ. Doc."

that he believed that he was communicating with an eighteen-year old girl.

On March 12, 2003, the court sentenced petitioner to 57 months in prison, 36 months supervised release, and a victim assessment fee of $100. Mr. Davis did not appeal his conviction or his sentence.

Mr. Davis has now filed a petition pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. In his petition, Mr. Davis contends that he is entitled to relief for the following reasons: He was denied effective assistance of counsel when his counsel failed to file an appeal; the statute of conviction is unconstitutional; and his conduct did not violate the statute.

Following its review of the record, including the affidavits of Mr. Davis and Ms. Julie George, Mr. Davis' trial counsel, the court held an evidentiary hearing on the petition.

For the reasons set forth below, the court denies Mr. Davis' petition.

## Analysis

### A. Constitutionality of the Statute/ The Legality of Mr. Davis' Conduct[2]

Mr. Davis contends that 18 U.S.C. § 2422(b), the statute of conviction, is unconstitutional because it prohibits protected speech. In support of his contention, he points to the decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002). According to Mr. Davis, the statute infringes upon his right to free speech because it penalizes communications with those who are not, in fact, minors. In a similar vein, he argues that because his conduct did not involve a minor, but an undercover agent, he did not violate the statute.

---

[2]The court will decide the first two issues on the merits even though Mr. Davis may have waived them when he failed to raise them through direct appeal.

2

In Free Speech Coalition, the Court declared two provisions added by the Child Pornography Prevention Act of 1996 overbroad and unconstitutional. The two provisions expanded the definition of child pornography to include "virtual" child pornography, that is, images that did not depict real children. But Mr. Davis' reliance on the decision in Free Speech Coalition is misplaced.

First, Mr. Davis misreads exactly what § 2422(b) makes criminal. A violation of the statute is complete when a person uses a facility of interstate commerce to attempt to induce a person he believes to be a minor to engage in sexual activity. It does not matter that the person is, in fact, not a minor. See United States v. Root, 296 F.3d. 1222, 1227-28 (11th Cir. 2002). Accordingly, the fact that Mr. Davis was communicating with an adult undercover F.B.I. agent was not a defense. The jury was instructed, and found, that Mr. Davis believed that he was communicating with a minor. (Instruction No. 18, Cr.Doc. No. 42).

Second, § 2422(b) is narrowly tailored and targets only those who "knowingly" attempt to persuade minors to engage in sexual activity. The Sixth Circuit explained why the narrow tailoring of the statute is important:

> The statute only applies to those who "knowingly" persuade or entice, or attempt to persuade or entice, minors. Thus, it only affects those who intend to target minors: it does not punish those who inadvertently speak with minors or who, as in Reno [Reno v. American Civil Liberties Union, 521 U.S. 844 (1997) where the Court found two provisions of the Communications Decency Act unconstitutional], post messages for all internet users, either adults or children, to seek out and read at their discretion. Any limited or incidental effect on speech does not infringe on any constitutionally protected rights of adults. Put another way, the Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts. Defendant's constitutional challenge is without merit.

3

### B. Failure of Counsel to File a Direct Appeal

Mr. Davis argues that he did not receive effective assistance of counsel because his trial attorney failed to file an appeal.

To demonstrate ineffective assistance of counsel, "a petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency." James v. Gibson, 211 F.3d 543, 555 (10th Cir. 2000), cert. denied, 531 U.S. 1128 (2001) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To succeed on the deficiency prong, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." James, 211 F.3d at 555 (citing Strickland, 466 U.S. at 689). "Judicial scrutiny of counsel's performance is highly deferential." Id. To succeed on the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. There is a strong presumption that counsel provided effective assistance, and a § 2255 petitioner has the burden of proof to overcome that presumption. James, 211 F.3d at 555.

When a petitioner claims his counsel was ineffective for failing to perfect an appeal, prejudice is presumed, and the petitioner must only satisfy the first prong of the Strickland test – establishing that counsel's performance fell below an objective standard of reasonableness. Romero v. Tansy, 46 F.3d 1024, 1030 (10th Cir. 1995), citing Abels, 913 F.2d at 823. The Tenth Circuit Court of Appeals addressed the parameters of criminal defense counsel's responsibility to perfect an appeal in Baker v. Kaiser, 929 F.2d 1495 (10th Cir.1991). The petitioner's attorney in

Baker failed to file a timely notice of intent to appeal. Although the petitioner did not tell his attorney that he wished to appeal, no one from counsel's office contacted the petitioner during the ten days within which he was required to file the notice of intent to appeal. The Baker Court held that the Sixth Amendment's guarantee of effective counsel requires that counsel explain the advantages and disadvantages of an appeal, advise the defendant as to whether there are meritorious grounds for an appeal, and inquire whether the defendant wants to appeal his conviction. Id. at 1499; see also United States v. Youngblood, 14 F.3d 38, 40 (10th Cir.1994).

Here, however, the court concludes that Mr. Davis' trial counsel fulfilled her obligation to inform Mr. Davis of his right to appeal; Mr. Davis simply did not act on that right. Ms. George, an experienced trial attorney, was a very credible witness at the hearing. Ms. George testified that following imposition of sentence on March 13, 2003, she met with Mr. Davis and his family in the courtroom. According to Ms. George, she believed that there were several "viable appellate issues." (Transcript of January 3, 2005 hearing "Tr."at 69; see also Aff. of Julie George, attached as Ex. A to U.S. Response in Opp. to Pet. Mot. to Vac. under 28 U.S.C. § 2255 ("U.S. Opp.")). Ms. George testified that she did not "talk about advantages or disadvantages of filing an appeal," but rather

> I don't recall giving him an opinion of "yes, you should appeal, or no, you shouldn't appeal." I remember asking them, "Do you want me to file an appeal . . . . The father answered first. And they seemed liked they were in shock. . . . . I felt so bad and said, "Do you want me to file an appeal? There are some viable issues?" And the father just shook his head and looked at the ground and said, "No." And then [Mr. Davis] just nodded his head and mumbled, "No."

(Id. at 70-71.)

Based on this conversation, Ms. George did not immediately file a notice of appeal.

Mr. Davis' mother and father and brother testified at the hearing. They testified that Ms. George advised them that if Mr. Davis filed an appeal, he would be facing charges of perjury and an additional five years of custody. (Id. at 12, 17, 44,47). But Ms. George testified that she did not give this advice to the Davis family and, in fact, she "had never heard of something like that happening." (Id. at 71). She also noted, that as far as the court giving Mr. Davis an additional five years in custody if he filed an appeal, "No. That isn't possible." (Id.)[3]

On March 19, 2004, when Ms. George received a copy of Mr. Davis' Judgment & Conviction Order, she sent a copy of the document to Mr. Davis with a letter. (Letter of March 19, Ex. B to U.S.Opp, Hearing Ex. A.) In the letter, Ms. George stated:

> Enclosed is a copy of the sentence entered in your case. As the Judge explained the time to appeal runs from when it was entered and that is March 17, 2003. If you want me to file an appeal you need to let me know by Monday March 24, 2003, so that I can file the appropriate paperwork. Send me a written request rather than a telephone message so that I know for sure when I got your reply.

(Id.).

Mr. Davis contends that he did not receive the letter. (Tr. 36). But the court does not find Mr. Davis' contention believable. First, the letter was sent to "James Davis 217 Sherman Street Rock Springs, Wyoming 82901." Second, Mr. Davis admitted that he was living at that address in March 2003. (Tr. 36). Finally, Ms. George testified that the letter was not returned to her. (Id. 79).

---

[3]The Davis' confusion could be the result of the court's having noted, during the sentencing hearing, that at trial Mr. Davis had testified contrary to the jury's conclusion of guilt. (See Tr. at 72 -76).

After writing the letter of March 19, 2003, Ms. George made one other attempt to contact Mr. Davis before the time for filing a notice of appeal had run. She called Mr. Davis at the number she had in her notes as his, and at which she had reached him before, and left a voice message. In her message, she told him "Again, I just need to know what you want to do on this. You have to let me know. It's a very short time period to appeal. If you want to do that you have to let me know." (Id.). Ms. George received no reply.

The court finds that Ms. George advised Mr. Davis, on several occasions, of his right to appeal. Mr. Davis knowingly chose not to have Ms. George file a notice of appeal. Accordingly, the court concludes that Ms. George fulfilled her obligation to Mr. Davis regarding his right to appeal. Mr. Davis has not shown that he received ineffective assistance of counsel.

For the above reasons, Mr. Davis' petition is DENIED.

DATED this __2__ day of May, 2005.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge